## SUPREME COURT—IN ADMIRALTY.

### ELIAS YOUNG *vs.* WILLIAM PHILLIPS.

IN a question of jurisdiction by the Courts of this Kingdom under the 21st Article of the Treaty with France, the right of the Court to take jurisdiction at its discretion, is governed as well by the general principles of maritime law as by the provisions of the Article.

The approval of the foreign Consul does not *confer* jurisdiction, but simply *invokes*, or *assents to*, the exercise of the jurisdiction which is *inherent* in our Courts.

The jurisdiction of the Courts to take cognizance of civil controversies between foreigners is affected to some extent by the French Treaty. But to render it necessary to have the consent or approval of the Consul, that the Court may take cognizance of the case, it is not only essential that the contending parties should be exclusively of the same nationality, but they must still be attached to the vessel by the terms of the contract of shipment.

If the complaining party has been discharged or forced to leave the vessel, having a just cause of action, while attached to the vessel, said party may maintain a suit in the Courts of this Kingdom, if they are willing to entertain it, unless he has bound himself by his contract of shipment to resort to no tribunals but those of the home forum.

The Courts of this Kingdom, sitting as Courts of Admiralty in common with Admiralty Courts in the United States and Great Britain, may exercise jurisdiction in cases like the present, where the termination as well as the inception of the contract is at the ports of these islands, and where an entire failure of justice would ensue, should the complaints be dismissed.

Protest of the Consul of the United States overruled, and cause remanded for hearing.

Justice ROBERTSON delivered the decision on the question of jurisdiction, as follows :

Elias Young filed two libels in Admiralty, before one of the Justices of this Court; the first being a libel *in personam*, against William Phillips, master of the whaleship "Arctic," in a cause of damage ; and the other, a libel *in rem* against the ship "Arctic," for wages.

Counsel for the respondent moved the Court to dismiss the libels on the ground that the Court has no jurisdiction over either case, without the approval or consent of the Consul of the United States at this port, by reason of the provisions of the 21st Article of the Treaty with France, and the 10th Arti-

cle of the Treaty with the United States of America.   The Justice overruled the motion, holding that the Court does possess, and may exercise jurisdiction in suits like the present. Whereupon an appeal was taken to the full Court.

Before the case came up for argument on the appeal, the Consul of the United States for Honolulu, filed a protest against the Court proceeding in the cause, which protest it was understood should be held applicable to the suit *in personam*, as if it should be overruled in that case, it could not prevail in the other.   The substance of the protest may be comprehended in two grounds of objection, viz : Firstly, that the ship " Arctic " is an American vessel, owned by citizens of the United States ; that both the parties litigant are citizens of the United States ; that the alleged cause of action arose on said vessel while on the high seas ; and that it is not usual for Courts of Admiralty, in cases of this kind and under similar circumstances, to entertain jurisdiction without the consent of the representative of the country to which the parties belong, which in this case is expressly refused : Secondly, that by the 21st Article of the recent Treaty with France, it is provided that Consuls shall have the *exclusive* charge of the internal order on board of the merchant vessels of their nations, and they are *alone* authorized to take cognizance of all crimes, misdemeanors, and other matters of *difference* which may supervene in relation to said internal order, and the local authorities are not to interfere therein, unless by consent of the Consul ; and that by virtue of the 2d and 10th Articles of the Treaty with the United States, the jurisdiction and privileges guaranteed to the Consuls and subjects of France belongs by parity to the Consuls and citizens of the United States.

The Consul's protest means, then, in few words, that under the general maritime law, as usually administered, the Court *ought not* to exercise jurisdiction in this case, without his consent ; and that in view of the 21st Article of the Treaty with France, we *cannot* exercise jurisdiction without such consent, which is refused.

In examining and deciding upon the question which is thus raised, we must take the case as presented by the allegations of the libel, no answer having been put in by the respondent, nor

evidence given before the Court. We note this position because, while the libel may show a *prima facie* case for our jurisdiction, the evidence might subsequently show that the case is in fact one in which we ought to decline, or do not possess, jurisdiction.

The libellant alleges that in the spring of 1859 he shipped at Honolulu on board of the "Arctic," as ship's carpenter, for one whaling season to the North, and to be discharged at Honolulu at the end of the season ; that, a short time after sailing from Honolulu, being at the Island of Saypan, one of the Ladrone Islands, the respondent obliged him to leave the ship and go on shore, the libellant being at the time unwell, but not in a manner dangerous to himself or others ; that the respondent caused him to be placed on shore without clothes other than those at the time upon his person, although he had a sufficiency of clothes on board of the ship, which he was not allowed to take away ; that he was purposely landed at a distance from the inhabited parts of the island ; that he was unacquainted with the manners or language of the inhabitants ; that Saypan is not a place of frequent resort for vessels, and that he was obliged to remain there for about a year, during which time he suffered great hardship.

We will first examine the proposition that the Court *cannot*, in view of treaty stipulations, entertain this suit without the consent of the Consul of the United States, because, if that position is sound, the libel must be dismissed. The twenty-first article of the treaty with France reads as follows : "In everything that concerns the police of the port, the lading and discharging of vessels, the safety of merchandise, property and goods, the subjects of the two countries shall be respectively subject to the laws and statutes of the territory. Nevertheless, the respective Consuls shall be exclusively charged with the internal order on board of the merchant vessels of their nation, and shall alone take cognizance of all the crimes, misdemeanors, and other matters of difference in relation to said internal order, which may supervene between the master, the officers, and the crew, provided the contending parties be exclusively French or Hawaiian subjects, and the local authorities shall not be allowed therein to interfere, unless by the approval

or consent of the Consuls, or in cases where the public peace and tranquility are disturbed and endangered.

Now, the question is, to what extent has his Majesty, by assenting to the provisions of this article, *limited* the exercise of the jurisdiction possessed by his Courts of Justice at the time the treaty was ratified? We say *limited*, because this article of the treaty has not, in fact, either augmented or diminished the jurisdiction which our Courts might have rightfully exercised previous to its adoption, but has simply made the exercise of jurisdiction in certain cases, to depend upon the approval or consent of the Consul, if there is one here, or upon the occurrence of a case which disturbs and endangers the public peace. It is equally true, then, in any case where our right to take jurisdiction is affected by the provisions of this article, as it would be in any case governed by general maritime law in which the Court might take jurisdiction at its discretion, that the approval of the foreign Consul does not *confer* jurisdiction, but simply *invokes*, or *assents to*, the exercise of the jurisdiction which is *inherent* in our Courts. (The "Golubchuck," 1 W. Rob., 143.) That this is true, is proved by the provision of the treaty itself, which guarantees the right of the local authorities to interfere in cases of disturbance of the public peace, without the Consul's consent.

At the time of the ratification of the treaty with France, the jurisdiction possessed by this Court, as a Court of Admiralty, extended "to all cases of Admiralty and maritime jurisdiction," (Constitution, Article 84), and the jurisdiction of our Courts generally extended, like that of other independent States, to all persons and property, for the time being, within the territorial limits of the Kingdom, whether ashore or afloat, with the exceptions made by the law of nations. Our criminal jurisdiction to try and punish for offenses being co-extensive with our right of penal legislation, embraced the power to punish all crimes and misdemeanors committed within the Kingdom, whether on board of ships or on shore, and on board of Hawaiian vessels on the high seas. And our civil jurisdiction extended to all suits against parties whose persons or property were found here, *wheresoever* the cause of action might have arisen; the exercise of jurisdiction in civil suits purely be-

tween foreigners being *discretionary*, and not compulsory un-
less made so by treaty.

How far, then, has this jurisdiction become affected by the
21st Article of the Treaty with France? The application of
our territorial laws, both criminal and civil, to foreign ships and
subjects, being within Hawaiian ports, and of course the right
to enforce those laws by our own Courts and our own modes of
trial, is still clearly preserved "in everything that concerns the
police of the port, the lading· and discharging of vessels, the
safety of merchandise, property and goods." This, no doubt,
includes quarantine laws, harbor regulations, custom house
regulations, and the like, as well as penal laws for the protec-
tion of merchandise and other property. But the right of the
local tribunals to enforce the territorial laws in cases of "crimes,
misdemeanors and other matters of difference in relation to the
*internal order* on board of the foreign ship, which may super-
vene between the master, the officers, and the crew, provided
the contending parties be *exclusively*" subjects of the nation
whose flag the ship carries, is made dependent upon the ap-
proval or consent of the Consul, or the disturbance of the
public peace. The whole Article, as we understand the fair
import of its language, is primarily, at least, of local applica-
tion, being operative generally in regard to matters arising be-
tween the officers and crew of the foreign ship, while within
the Kingdom. The criminal jurisdiction of our Courts never
did, either before or since the adoption of the Treaty, extend
to the trial of parties for crimes or misdemeanors committed
on board of foreign ships upon the high seas, because our penal
laws do not cover them, except in case of piracy. The Treaty,
therefore, does not apply to those cases. But previous to the
adoption of the Treaty, our criminal jurisdiction extended to
the punishment of all crimes and misdemeanors committed on·
board of foreign merchant vessels while being in Hawaiian
waters. To this branch of jurisdiction the Treaty does apply,
by rendering its exercise dependent on the Consul's consent, or
the existence of particular circumstances. But the language of
the Treaty includes "matters of difference" between the mas-
ter, officers and crew, in relation to the internal order of the
ship, giving the article a more extended application. Matters

of difference must include matters of civil controversy.  Previous to the adoption of the Treaty, our Courts were in the habit of taking cognizance of civil controversies between foreigners, arriving here, whether arising *ex contractu* or *ex delicto,* at sea or on shore.  The exercise of this branch of jurisdiction is unquestionably affected, to some extent, by the Treaty.  We conceive that our Courts cannot now take cognizance of any civil suit arising out of a controversy supervening between the master, officers and crew of a foreign ship, in relation to the internal order, on the high seas or in our own waters, if the contending parties are exclusively of the vessel's nationality, without the consent of the Consul, if there be one here.  But we conceive that in order to give the Consul cognizance of the controversy, or to render it necessary to have his consent to the Court's taking cognizance of it, both the contending parties must still be attached to the vessel.  If the complaining party has been discharged from the ship, or if he has been wrongfully forced to leave her, having a just cause of action for any wrong done to him while attached to the ship, or for wages due and unpaid, he may maintain a suit for the same in our Courts, if they are willing to entertain it, unless he has bound himself by his contract of shipment to resort to no tribunals but those of the home forum.

The present case is unlike the recent cases of Enos *vs.* Sowle and Vieira *vs.* Sowle, in this respect, that there the libellants were not American citizens, but here both the libellant and respondent are American citizens, which gives a degree of weight to the protest of the Consul in the present case.  But, if our view of the twenty-first article of the treaty with France is sound, the sameness of nationality in the contending parties is not of itself sufficient to sustain the protest, if either of the other concommitants prescribed by the treaty is wanting.

So far as the case is presented by the libel, it does not appear that the cause of action arose out of matters pertaining to the internal order of the ship ; and it is alleged that the libellant was wrongfully compelled to quit the vessel, thereby terminating his relation to her.

It was argued by counsel for the libellant, and there is great weight in the argument, that he is here now in the attitude of

Elias Young·v. William Phillips.

an American citizen, not attached to any ship, claiming to have a right of civil action against the respondent, who was also here when the suit was commenced ; and that, under the provisions of the treaty between this Kingdom and the United States, the libellant has the same right to seek redress in the Courts of this country, as if he were a Hawaiian subject.

As the case appears at present, we do not think we are precluded from entertaining it, by the twenty-first article of the treaty with France ; and we will now consider whether or not we ought to entertain it without the consent of the Consul, under the circumstances of the case, and without reference to the treaty. That rests, as has been repeatedly held in this Court before, in the sound discretion of the Court. That this Court, in common with Admiralty Courts in the United States and Great Britain, may exercise jurisdiction in cases like the present, we think is clear; and on this point we will simply refer to the numerous adjudged cases and the authorities, cited in the recent suit of Enos vs. Sowle (2 vol. Hawaiian R., 332), and to the judgment of the late Chief Justice Lee, in the case of Williams vs. Lawrence et als. (1 vol. Hawaiian R., 295), a case much in point in the present instance.

It appears that Young made his contract for service on the " Arctic " at Honolulu, for one cruise only, and to be discharged at Honolulu when the season closed. His contract with the ship had its inception here, and was to have terminated here, not in the United States, where the ship is owned. The arrival of the ship at Honolulu was to terminate the voyage, so far as he was concerned. Honolulu became to him the home port. But, unfortunately, Honolulu is not the home port of the ship ; that is on the Atlantic coast of the United States, and the time when the ship will arrive there is wholly uncertain. From the fact that a whaling voyage from thence lasts several years, during which the ships often employ fresh hands at our ports, from season to season, one voyage becomes, in fact, a series of voyages, the end of each season being, in effect to those who engaged for that season, the end of the voyage, when they are entitled to a settlement and the payment of any claims they may have against the ship or master. Such being the case, it follows

that the Court of Admiralty here must either, in many cases, assume to exercise its jurisdiction in suits between foreigners, or turn complaining parties away, with the knowledge that their claims, however just they may be, will never be heard by a Court of justice. The Court of Admiralty here has, for the last fourteen years, frequently exercised this jurisdiction, in the interests of commerce and humanity, and, until within a few weeks past, no protest against its doing so has ever, we believe, been placed on its files by any foreign Consul resident here.

The libellant in this case is, we understand, resident here ; he is so poor that the Court allowed him to institute his suit without giving security for costs upon his own *juratory* caution. If the allegations of his libel are true, he has followed the respondent from the Ladrone Islands to this Kingdom to seek redress ; and now to refuse to entertain his complaint and tell him he must resume his pursuit of the ship until he finds her in New Bedford, would, to say the least, be extremely hard, and not consonant with justice or equity.

The protest is, therefore, overruled, and the cause remanded for hearing by the Justice before whom the libel was originally filed ; and the libel *in rem* against the ship, will follow the same course.

Mr. Harris for the libellant.

Mr. Bates for the respondent.