PEACOCK & CO. *v.* UNITED STATES (No. 642).[1]

LEAKAGE OF SAKE NONDUTIABLE UNDER TARIFF ACT OF 1897.

The evidence shows apparently that the leakage here occurred before importation. Under paragraph 296, tariff act of 1897, sake was held dutiable by similitude only as still wine ; and, further, the provision in that paragraph that no allowance should be made for leakage of wine could be made to apply to this importation only by construction. To apply it by construction is to do violence to an accepted principle of law. The leakage of sake was not dutiable.—United States *v.* Gonsalves (2 Haw. Rep., 354; T. D. 26737).

United States Court of Customs Appeals, November 22, 1911.

APPEAL from Board of United States General Appraisers, Abstract 24628 (T. D. 31236).

[Reversed.]

*Curie, Smith & Maxwell* (*W. Wickham Smith* and *Thomas M. Lane* of counsel) for appellants.

*Wm. L. Wemple*, Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

Under the tariff act of 1897 the appellants imported from Kobe to Honolulu 500 casks of sake, which is an intoxicating beverage made

---

[1] Reported in T. D. 32047 (21 Treas. Dec., 595).

from rice by a process somewhat akin to brewing, and which possesses some slight resemblance to still wines.

The United States gauger found that 475 of the imported casks were full to their capacity, that 7 of them were entirely empty, and that 18 of the casks were partly empty. These latter casks had a net capacity of 166 and a fraction gallons, but contained in fact only 81 and a fraction gallons, leaving them 85.1 gallons short of their net capacity, after deducting the 2½ per cent of allowable outage. The invoice failed to state the quantity of sake which was in the casks when they were exported. It has therefore been properly accepted as a fact throughout this litigation that the casks were filled to their capacity at exportation.

The collector classified the importation by similitude with still wines containing more than 14 per cent of absolute alcohol, and assessed the same with duty at 50 cents per gallon under paragraph 296 of the act of 1897.

It appears from the printed record and from the official documents in the case, which are forwarded therewith, that the duty upon the cargo was thereupon liquidated at the rate of 50 cents a gallon, computed upon the actual contents of the casks as ascertained and reported by the gauger. The full casks were assessed upon their capacity; the empty casks were not assessed at all; and the partly empty casks were assessed upon the actual contents thereof, which was 85.1 gallons less than their entire capacity.

About three months after this liquidation, however, the collector was directed by the department to reliquidate the entry above stated, in so far as it related to the 18 partly empty casks, by requiring an additional payment from the importers, so as to make the entire payment equal to the duty at 50 cents a gallon computed upon the full capacity of the casks, less only the 2½ per cent of allowable outage. The result of this, of course, was to require payment of duty by the importers upon the 85.1 gallons net shortage in the 18 partly empty casks. Acting upon this authority, the collector reliquidated the entry by requiring the payment of the additional duty required thereby.

The importers duly filed their protest to this order of reliquidation, and contended that the gauger's finding correctly stated the quantity of sake which had reached port, and that duty should therefore be assessed upon that quantity alone and not upon the quantity which had been exported. They contended that the shortage in the 18 casks had resulted from leakage at sea in transit, and that no duty should be collected upon the 85.1 gallons of sake thus actually failing of importation.

This protest was heard by the Board of General Appraisers and was overrruled. The importers now pray for a reversal of that decision of the board.

As has already been noted, the collector classified the imported sake by similitude with still wine under paragraph 296 of the act of 1897 and assessed duty accordingly. This classification is no longer open to controversy; the final word of a long history of litigation upon that subject was spoken by the Supreme Court in the case of Komada *v.* United States (215 U. S., 392). The controversy in this case does not therefore relate to the classification of the importation nor to the rate of duty assessed pursuant thereto, but it relates solely to the quantity upon which the rate of duty should be assessed in the matter of the 18 partly empty casks.

Two questions present themselves as parts of this issue. One relates to the facts and the other to the law. How much sake, according to the record, did actually reach port? And if the quantity which actually reached port was less than the quantity exported because of leakage in transit, should the duty be assessed upon the quantity exported or only upon that part of it which actually reached port?

Taking up the question of fact first, it is conceded that the casks were full when they were shipped at Kobe, and that the only evidence concerning their contents upon importation is that contained in the report of the gauger and the statements in the official documents above mentioned in connection therewith. It appears therefrom that when the vessel was unloaded at Honolulu the 18 casks in question were found to be lightweight, and in accordance with instructions from the collector were set aside for the gauger's inspection. The gauger made the inspection and found them to contain the quantities set forth in his report, the only direct evidence of leakage being the varying quantities of liquor found in the various short-weight casks. The gauger filed his report setting out the finding as first above noted. The first liquidation was thereupon made upon the basis of that finding and report.

This evidence is somewhat meager, and yet it seems to be much more consistent with the theory of a loss by leakage before importation than with any other theory. It is a matter of common knowledge that losses do sometimes occur by leakage of liquors from casks while in shipment. It is evident that both the gauger and the collector were satisfied at the time of the first liquidation that such a loss had happened in this case. The matter was then fresh in their attention, and this was the impression made upon their minds by what they saw. The importers must have been then and there given to understand that there was no dispute about the facts. It is

apparently conceded even yet that this finding was correct in so far as it related to the 7 casks which were wholly empty. They, too, had been full at exportation, but they were found to be wholly empty when examined by the gauger. Even in the reliquidation subsequently directed no duty was assessed upon the sake which was in these casks when they were exported, evidently because it was still accepted as a fact that their contents had been wholly lost by leakage at sea before they reached port. The same evidence, however, exists concerning the shortage of the 18 partly empty casks. It is true that the leakage in both cases may possibly have occurred after the vessel reached port and before it was unladen, in which event of course the shortage should not be allowed, but it is highly probable that a leakage so recent could have been detected and located as such. Under all the circumstances, therefore, the natural conclusion seems to be that the shortage resulted from leakage which totally emptied some casks and partly emptied others while the consignment was in shipment prior to importation. Furthermore it may be noted that in the direction given by the department to the collector for reliquidation the foregoing question of fact in relation to the contents of the casks at importation was not set out as the basis of the ruling, but only the question of law above suggested. It does not seem to have been denied even then that the leakage in question had occurred before the vessel reached port. The collector was, however, referred to preceding rulings of the department to the effect that no allowance should be made for leakage of sake while in transit, because the law prohibited such allowance even if the shortage occurred before importation. The reliquidation as thus directed was not therefore had because of a controversy about the facts in the case, but rather because of the position taken by appellee in its construction of the law as above indicated.

Coming, therefore, to the issue of law involved in the case, it appears that sake was not specially mentioned in the tariff act of 1897, and that it was classified by similitude only as still wine under paragraph 296 of that act. In that paragraph it was expressly provided that no allowance should be made for leakage on wines, liquors, cordials, or distilled spirits. It is contended by the Government that sake, being classified as still wine under the paragraph, was therefore also subject to the express proviso therein contained prohibiting any allowance for the leakage of such wines. It is contended by the importers that the proviso contained in the paragraph does not apply to sake because it relates in terms to actual still wines and does not include sake, which is not actually a still wine but was classified as such by similitude only.

Upon a similar issue of law the Board of General Appraisers announced an opinion in the case of Gonsalves et al., published as G. A. 5690 (T. D. 25332). In that case the board held with the contention

of the importers as above set out. The following is part of the syllabus of that decision:

1. EFFECT OF SIMILITUDE CLAUSE.

   A finding under section 7, tariff act of 1897, that a nonenumerated article is similar, either in material, quality, texture, or use, to an article enumerated in said act does not place such nonenumerated article in the category of the enumerated article which it resembles for all purposes in administration of the law, but only for the purpose of making it subject to the same rate of duty.

2. SAKE—ALLOWANCE FOR SHORTAGE—PROVISO OF PARAGRAPH 296, TARIFF ACT OF 1897.

   The proviso in paragraph 296, tariff act of 1897, which requires that "there shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits," does not apply to Japanese sake, dutiable by similitude at the same rate as still wine under said paragraph 296. An allowance must accordingly be made for sake which never reached the port of importation, having been lost in transit through leakage or other cause.

This decision of the board was affirmed by the District Court for the District of Hawaii in the case of United States *v.* Gonsalves (2 Haw. Rep., 354; T. D. 26737). The department, upon advice of the Attorney General, did not prosecute error to that decision. In the decision of the present case the board still adheres to the view of the law expressed by it in the case just above cited; the present decision of the board overruling the importers' protest is founded wholly upon its conclusion concerning the weight of the evidence upon the question of fact above stated.

The decision of the law question contained in the Gonsalves case commends itself as sound upon reason and authority. It can not be contended that sake is in fact a still wine; it was made dutiable as such under the act of 1897 by similitude only. The similitude paragraph of that act provided that every nonenumerated imported article which is similar, either in materials, quality, texture, or the use to which it may be applied, to any article enumerated in the act as chargeable with duty shall pay the same rate of duty which is levied on the article which it most resembles in any of the particulars before mentioned. It is by virtue of this provision that sake was assessed with the same duty as still wines. However, the provisions of the similitude paragraph above referred to do not undertake to place any imposition upon the article affected by it other than the appropriate duty only. The paragraph provides that such similar article shall pay the same rate of duty as that levied upon the dutiable article which it most resembles. There is no provision in the paragraph that such similar articles shall be subject to all the other laws and regulations appertaining to the dutiable article which it so resembles. Therefore, if any burden additional to the appropriate duty is levied upon any article by force of the similitude paragraph it must be done by construction alone. That is, the additional imposition in such case would not be levied because of any express provision of the law in that behalf, but would only be authorized by the general spirit

and intendment of the enactment as construed from its terms and the circumstances. If the restrictive proviso therefore contained in paragraph 296 is applied to sake it must be done by such implication or construction only. This would contravene the authoritative principles which are expressed in the following extract from United States v. Wigglesworth (28 Fed. Cas., 596):

It is * * * a general rule in the interpretation of all statutes levying taxes or duties upon subjects or citizens not to extend their provisions by implication beyond the clear import of the language used or to enlarge their operation so as to embrace matters not specifically pointed out, although standing upon a close analogy. In every case, therefore, of doubt such statutes are construed most strongly against the Government and in favor of the subjects or the citizens, because burdens are not to be imposed, nor presumed to be imposed, beyond what the statutes expressly and clearly import.

Under what may be termed the common law of the subject, duty should not be assessed upon such part of an exportation as fails to reach port, the general rule being that such parts of a shipment as are lost at sea before the vessel reaches port do not become an importation. This rule may of course be changed by legislation, and duty may be required from an importation upon its invoice or actual contents at exportation without deduction for losses in transit. It is also true that such an express provision in relation to wines, liquors, cordials, and distilled spirits does appear in paragraph 296 of the act of 1897. But sake does not come properly within any of these classes, for it is not properly either wine, liquor, cordial, or distilled spirits. If it were any of these articles, it would have been directly assessed as such. It was assessed with the same duty as wine by similitude only under the provisions of the similitude paragraph. That assessment, however, was not based upon construction only, but upon the express terms of the act; but there are no express terms which subject the article to any imposition other than the duty alone. Therefore, if it is to be taken out of the common law rule in relation to shortage as above noted, it must be taken out by construction and implication alone and not by force of any direct or express provision of the act to that effect. This would virtually be equivalent to levying an assessment upon the article by implication or construction alone.

Therefore, upon the entire record this court holds that as a matter of fact the shortage in the 18 partly empty casks like the shortage in the 7 entirely empty ones resulted from leakage at sea before importation, and as a matter of law, under the tariff act of 1897, such leakage thus occurring at sea before importation should have been deducted from the exported contents of the casks for the assessment of duty.

The decision of the board is therefore *reversed* and reliquidation ordered accordingly.