## FURUYA & CO. *v.* UNITED STATES (No. 668).[1]

LEAKAGE OF RICE WINE OR SAKE.

In the past there has been much contention over sake and the leakage of sake, but the tariff act of 1909 would seem, by providing in paragraph 307 for rice wine or sake expressly and forbidding any allowance should be made for breakage, leakage, or damage on wines, to have placed the question beyond doubt. It was properly held, as here, no such allowance should be made on sake.

United States Court of Customs Appeals, December 6, 1911.

APPEAL from Board of United States General Appraisers, Abstract 25232 (T. D. 31478).

[Affirmed.]

*John Giblon Duffy* for appellants.

*Wm. L. Wemple,* Assistant Attorney General (*Wm. A. Robertson* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

Under the tariff act of 1909 the appellants imported into this country a shipment of sake, which is an alcoholic beverage manufactured from rice.

---

[1] Reported in T. D. 32095 (21 Treas. Dec., 720).

The collector held the importation to be dutiable under paragraph 307 of that act and assessed duty accordingly. There is no controversy concerning that classification or the rate of duty assessed by the collector. The importers, however, objected to the quantity upon which the collector computed the assessment. The collector assessed duty upon the entire quantity of sake which had been shipped, as shown by the invoice, whereas the importers alleged that part of the contents of the casks had been lost by leakage while in transit. The importers contended that no duty should be demanded for such part of the original exportation as had failed, because of this leakage, to reach port. The importers filed their protest against the assessment on that ground. This protest was heard by the Board of General Appraisers, and the same was overruled. The importers now pray for a reversal of that decision of the board.

The pertinent parts of paragraph 307 of the act of 1909 read as follows:

307. Still wines, including ginger wine or ginger cordials, vermuth, and rice wine or sake, and similar beverages not specially provided for in this section, in casks or packages other than bottles or jugs, if containing fourteen per centum or less of absolute alcohol, forty-five cents per gallon; * * * *And provided further:* That there shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits. * * *

The present tariff law is the first one which has fixed a rate of duty to be levied upon sake *eo nomine.* Under former acts that article was the subject of much litigation and there are many reported decisions relating to it. However, in the act of 1909, as appears by the above copy, sake was placed by name in the still-wine paragraph, and is therein called rice wine or sake. It nowhere distinctly appears that these two names apply only to the same identical article; that is, that they are exact synonyms. There may, indeed, be other kinds of rice wine besides sake; but the language of the act and the references to the article appearing in published cases make it safe to assume that the term "rice wine" at least includes sake, and that it is so used in the paragraph. As appears above, there follows in the same paragraph an express provision that there shall be no constructive or other allowance for leakage on wines. The question therefore arises whether there can be any allowance under the act for leakage of sake in transit in view of the provision that there shall be no allowance for leakage on wines.

Sake is made from rice by a process of fermentation, and grapes do not enter at all into its composition. In the ordinary use of terms, therefore, sake would not be called a wine. Under prior tariff acts it was held to be dutiable by similitude at the same rate as still wines. But in the present act it is specially placed within the still-wine paragraph and expressly named therein as a wine. In the

nomenclature adopted by the paragraph, therefore, it becomes a kind of wine, whether it would ordinarily be so designated or not. This description of sake as a kind of wine is followed in the paragraph by the provision that there shall be no allowance for leakage on wines. It seems, therefore, to be a reasonable and natural interpretation of these provisions taken together to hold that one of the wines on which there shall be no allowance for leakage is the kind of wine also called sake, which is expressly named as a wine in the preceding recital of the paragraph. This seems, indeed, to be the very purpose for which the name rice wine was used in the paragragh, for there. was otherwise no need of making the meaning of the word sake more definite by the use of such an explanatory alternative name. In the tariff vocabulary of mercantile terms sake had come certainly to have even a prominent place; there was no uncertainty as to the article to which that name applied. The alternative name, rice wine, therefore, seems to have been used for the purpose of adding that much to the original meaning of the term, namely, that for the purpose of the paragraph sake was to be considered as a kind of wine and to be included within any of its provisions which applied generally to wines.

This view finds support in the fact that under the act of 1897 there was much controversy as to whether this inhibitive provision applied to sake when that article was made dutiable as a still wine under the paragraph by similitude only. The Government then contended that the provision applied to sake; the importers contended that it did not. The importers argued that, even though sake was assessed as a still wine by similitude, nevertheless it was not actually a still wine, nor was it in fact a wine at all, and that the proviso prohibiting any allowance for leakage on wines should not be extended to it by implication or construction. The application of the term wine to the article in the present act seems to be an avoidance of this contention, for it shows a legislative purpose to place the article in the paragraph as a wine, subject to the general provisions relating to wines therein.

The appellants cite the vermuth case, United States *v*. Wile (178 Fed. Rep., 269) as an authority in support of their contention in this case. In that case it was held that the proviso now in question did not apply to vermuth, which is an article included *eo nomine* within the still wines paragraph of the act of 1897, as it is also in the present act. Appellants contend that the same reasoning which prevented the application of the inhibitive provision to vermuth would also prevent its application to sake. However, in the cited case the court held that vermuth was neither wine, liquor, cordial, nor distilled spirits, nor was it named as such in the paragraph, but rather that it was named therein as *sui generis*, and therefore that it did not come within the terms of the proviso, which related only to

wines, cordials, liquors, and distilled spirits. But, as appears above, in the act of 1909 sake is denominated a wine in paragraph 307, and this is the paragraph which contains both the duty and the proviso. It is true that it is called rice wine or sake, and the claim may be made that the proviso applies only to wines which may be called such without further description or explanation. But, on the other hand, the term wines contained in the proviso is comprehensive and unqualified, and it is not a forced interpretation which makes it include all articles called wines by the terms of the same paragraph and in relation to the same general subject matter.

The decision of the board holding that no allowance is permitted by the act of 1909 for the leakage of sake while in transit is therefore approved; and the same is *affirmed*.